## MORRILL & a. v. FOSTER.

If a copy of a record is offered in evidence, the whole which relates to the questions in dispute may be read.

The statements of a deceased relative are competent evidence of the time of a person's decease.

The declaration of a person in possession of lands in fee, and adjoining lands for life, are not admissible for the owners of the fee, to prove the line between the estates.

The inventory of the estate of a person deceased is competent evidence against his administrator, to disprove his title to lands not inventoried.

Declarations accompanying an act are not admissible as part of the *res gestæ*, unless the act is of itself material.

The statements of one under whom a party claims, made when, if the claim is well founded, the person must have been in possession of the title, adverse to his interest, are admissible against the party claiming under him.

PETITION FOR PARTITION. On trial of the issues joined upon the seizin of the petitioners, and upon the sole seizin of the petitionee, the petitioners claimed each one fourth of the land, under a title from Joseph Hemphill, deceased, who lived upon the land in 1781, and died in possession of it in 1782. His widow and children continued to live upon it, and carried it on till 1797, when the widow's dower was set off to her, and the residue of the farm divided among his four children and heirs by the court of probate; Robert, the eldest, having two fifths, and

each of the others, Matthew, Sarah and Betsey, one fifth. The widow lived on and occupied the dower till 1803, when she conveyed her right to Solomon Wheeler, who occupied till he conveyed the land by a warrantee deed to John Thompson, in 1804, under whom the defendant claims. The widow died in January, 1829, or earlier.

The petitioner Morrill claimed the share of Betsey Hemphill in the dower, by a deed dated December 23, 1845, she being then Betsey Kimball, a widow.

The petitioner Martin claimed the share of Matthew Hemphill, by a deed from him to Nathaniel Martin, deceased, dated in 1801, and a devise from said Nathaniel in 1839.

To show the bounds of the dower, the petitioners introduced the report of the committee to assign the dower and divide the estate ; and the defendant objected to the reading of that part of the report which described the portions of the heirs, but the court permitted the whole to be read.

To prove that the widow Hemphill died in January, 1829, the petitioners introduced the testimony of three persons, who were present at her funeral ; while, to show that she died two or three years earlier, the defendant offered proof of the declarations of a niece of Joseph Hemphill, now deceased, made within a few years of the widow's death ; but it appeared that she lived fifty miles from her at her decease, and knew nothing of the time except by hearsay. The court rejected this evidence.

The declarations of David Kimball, deceased, who was in possession of the dower and the land adjoining it, was offered by the defendant, to show where was the line of the dower ; but as he owned only the title of the widow in the dower, while he had the fee of the adjoining land, the court rejected the evidence.

To raise a presumption that Betsey Kimball and Matthew Hemphill, or Nathaniel Martin, had conveyed their shares of the dower to some one whose title the defendant had by deeds which had been lost, the defendant offered evidence that Solomon Wheeler, and those claiming under him by warrantee deeds, had been in the peaceable and undisturbed possession of the land

from 1803 to the filing of the petition in November, 1848, and that about the year 1845 the defendant built a house and barn on the land. He also introduced a copy of the inventory of Nathaniel Martin's estate, made and filed by the petitioner Martin, as executor of said Nathaniel's will, in which no mention was made of the land in controversy, and the court admitted it.

He also offered the testimony of Hannah Baker, that just before the conveyance from Solomon Wheeler to John Thompson, she saw Moses Kimball, the husband of Betsey Kimball, start away from her house in Pembroke with a pair of horses and lumber sleigh, saying he was going to Solomon Wheeler's after a load of goods, and that she saw him return with a load of goods, of about the value of his wife's interest in the land. This was objected to by the defendant, and excluded by the court.

The petitioners introduced the deposition of Betsey Kimball, who testified that she had never conveyed her interest in the land in controversy to any one except the petitioner Morrill, in 1845. To contradict her, the defendant offered evidence tending to show that in 1841 she said the heirs had all signed an acquittance to the land, and that her husband received a yoke of oxen and something in store pay, in part pay for the dower, and the evidence was admitted for this purpose.

The defendant's counsel, before commencing his argument to the jury, gave notice that he should claim that this should be received as substantive evidence, but the court ruled that it could not be so received ; and being afterward requested to charge the jury that this evidence was to be weighed as substantive proof of the truth of the facts stated, the court declined to do so, and charged the jury that the evidence could be considered only as evidence to contradict her, and not as evidence of the truth of said declarations.

The court charged the jury that if they believed, from the evidence, that Joseph Hemphill went into possession of the land conveyed to him in 1781, and remained in the peaceable and undisturbed possession of it till his death, in 1782, and that his

widow remained in like possession till 1797, when it was divided, as before stated ; and that after said division and assignment of dower, the widow remained in like possession of the dower, under the title of her husband, till she conveyed to Solomon Wheeler, in 1803, it would be evidence of adverse possession, and would enure to the benefit of the title of Joseph Hemphill ; and, being continued twenty years, would give the heirs of said Hemphill a title to the reversion.

Exceptions were taken to these rulings and instructions, and a new trial moved for by the defendant.

*Bellows*, for the defendant.

I. The description of the shares assigned to the heirs, though in the same report, is not competent evidence of the boundaries of the dower, the dower being first assigned. It stands like any other contemporaneous grant, *res inter alios*.

II. The declarations of the niece of Mrs. Hemphill, as to the time of her death, were admissible. She was a relative, and had no interest. The declarations were made soon after the death of Mrs. Hemphill, which was as early at least as 1829. It is immaterial that the relationship was by marriage. *Waldron* v. *Tuttle*, 4 N. H. 371; 1 Greenl. Ev., sec. 103, and notes ; 2 Cowen Phill. Ev. 617, note 466 ; *Vawles* v. *Young*, 13 Vesey, Jr., 140 ; *Lessee of Jewell* v. *Jewell*, 1 How. U. S. 219. Pedigree embraces both marriage and death. 1 Greenl. Ev., sec. 104.

III. David Kimball had possession on both sides by the same title, by deed with warranty, followed by undisturbed possession for twenty years ; and it is only by the finding of the jury now that he is said to have no title.

IV. The testimony that the husband of Betsey Kimball, just before the sale to Solomon Wheeler of the dower, received of Wheeler, in goods, the value of the land, ought to have been received.

V. The statement of Mrs. Kimball should have been received as substantive evidence, having been made before she parted with the title. 1 Greenl. Ev., secs. 189, 190, and notes ; 1

Morrill *v.* Foster.

Cow. Phil. Ev. 257 ; 2 ditto 650, note 481, and cases cited ; *Downs* v. *Lyman*, 3 N. H. 487 ; *Pike* v. *Hayes*, 14 N. H. 19 ; *Smith* v. *Powers*, 15 N. H. 546 ; *Hobbs* v. *Cram*, 2 Foster 130 ; *Jackson* v. *Davis*, 5 Cowen 129. If it were not so, a party might avoid the effect of his admissions by conveying to another. It makes no difference that the defendant also claims under Betsey Kimball by a prior conveyance. The plaintiff has no other title but hers. *Brattle Square Church* v. *Bullard*, 2 Met. 363. So in numerous cases where the acts and declarations of a grantor are admitted to show fraud. *Bridge* v. *Eggleston*, 14 Mass. 245. So a declaration of a grantee, that there was no fraud in his purchase, is good against his grantor. *Norton* v. *Pettibone*, 7 Conn. 319 ; *Jackson* v. *Baird*, 4 Johnson 230.

*Flint & Bryant*, for the plaintiffs.

I. It was made a question at the trial where the south line of the dower was. The whole of the report was competent, because — 1. It was altogether one entire instrument, and could not be properly understood without construing it altogether as a whole. 2. The dower and children's shares embraced the entire farm, and when it was made a question where the south line of the dower was, it became necessary to know how the other shares were laid out and bounded.

II. The *time* of the death of the widow Hemphill is not a question of pedigree. Webster's Dict., Pedigree. This evidence is admitted only on the ground that there is no better evidence existing. *Doe* v. *Randall*, 2 Moore & P. 20 ; 17 Eng. C. L. 624. Here there were three witnesses on the stand, who *knew* the *time* of her death.

III. David Kimball owned but a life estate in the dower, and the fee in the remainder ; he was, therefore, interested to make the dower as small as possible. His sayings are, therefore, ' incompetent. *Shepherd* v. *Thompson*, 4 N. H. 213 ; *Smith* v. *Powers*, 15 N. H. 546. The case does not find, neither was it true, that D. Kimball had been in possession of the land twenty

Morrill v. Foster.

years. But if he had been it would not alter the case, for the widow was then alive.

IV. The fact that Moses Kimball drew a load of goods from Wheeler's to John Thompson's, if it were true is entirely incompetent to prove any thing in this case; much less is what he said when he started, competent to prove the existence of such a fact. See opinion in this case, 32 N. H. 358; 1 Phil. Ev. 231; Steph. N. P. 1562; Sessions v. Little, 7 N. H. 271; 1 Greenl. Ev. 122.

V. The sayings of Betsey Kimball were only offered for the purpose of contradicting her. After the testimony was closed they ought not to be urged, or allowed to be used for another purpose than that for which they were offered, when they were expressly offered for a single purpose. R. R. Co. v. Stimpson, 14 Pet. 448, 463. Besides, Betsey Kimball is alive, and a competent witness. Steph. N. P. 1570; Ross v. Knight, 4 N. H. 237; Copp v. Upham, 3 N. H. 159.

The defendant took the ground that she had conveyed away her interest in this land in 1803 or 1804, and if so, she had no interest in 1841, and her sayings would be incompetent. She was not in possession in 1841, and her admissions were not connected with any act, and were mere hearsay.

BELL, J.* The property of Joseph Hemphill was divided by a committee appointed by the court of probate, dower being assigned to the widow and the residue set off in shares to the children. They made a single report of their doings, which was accepted by a decree of the court. It became material to show where was the line of the land assigned to the widow for her dower, and the court held that the whole report might be read in evidence. It was objected that no more of the report should be read than had direct reference to the dower. The whole was properly admitted. The general rule is, that when copies of records are used as evidence, the entire record should be pro-

---

* PERLEY, C. J., and FOWLER, J., having been of counsel, did not sit.

duced. This principle is distinctly laid down in Com. Dig., Evidence, A, 4. "The whole record which concerns the matter in question should be produced;" and in 1 Greenl. Ev. 555, and 2 Phil. Ev. 138. The rule is laid down more fully in *Woods* v. *Banks,* 14 N. H. 109, where *Parker,* C. J., says : " Copies of so much of the record as relates to the subject matter of the suit are allowed. See *Packard* v. *Hill,* 7 Cowen 434. But there should generally be an entire copy of the proceedings of a particular meeting, or any thing done and transacted at a particular time. Records are usually in parts, and there should be a copy of all the matter made up and attested as a record at any particular time, so that the jury may have the whole evidence, and the courts be enabled to give the right construction to what is done. But where what relates to the matter in question is a distinct and independent record, a copy of that is sufficient." The same principle is also held in *Whitehouse* v. *Bickford,* 9 Foster 471.

So that the general rule may be stated to be, that extracts are not admissible in evidence, unless it appears that the copy of the record, and, by parity of reason, of any other instrument, contains all that relates to the matter in question. The objection is not made on the ground that the part of the record objected to does not relate to the matter in controversy — that is, the location of the line of the dower — but because it does not relate to the dower estate. Ordinarily all parts of the same instrument are to be considered and construed together. *Webster* v. *Atkinson,* 4 N. H. 21; Shep. Touchstone 87 ; *Clough* v. *Bowman,* 15 N. H. 504. It could hardly be otherwise than that the report of a committee like this should refer to the same lines in more than one way, so that one part would throw light upon the other. Such seems to be the present case, and the ruling therefore proper.

II. If competent, the testimony of her niece, as to the time of the death of Mrs. Hemphill, should have been received, though its weight might not be great. While the general principle is admitted, that hearsay evidence is admissible to prove a

pedigree, provided it is the declarations of deceased relatives, who have no interest to misrepresent. *Waldron* v. *Tuttle*, 4 N. H. 378. It is contended that the time of a death is not a question of pedigree. This is a question depending upon authority, and the language of the books must be deemed decisive on this point. "The term pedigree embraces not only descent and relationship, but also the facts of birth, marriage and death, and *the times* when those events happened." 1 Greenl. Ev., sec. 104. The same rule is laid down in 1 Ph. Ev. 213 ; *Moncton* v. *Att. Gen.*, 2 Russ. & M. 161 ; *Kidney* v. *Cockburn*, 2 Russ. & M. 167 ; *Herbert* v. *Tucknal*, T. Ray. 84.

III. The evidence of David Kimball was properly rejected. He was in possession of the property, and his declarations, if against his interest at the time, were admissible, but they were incompetent if they were in favor of his interest. 4 N. H. 213 ; 15 N. H. 546, cited for defendant. Here the deceased had a fee in the south part, and a life estate in the rest, and his declarations tended to increase his estate in fee, and were, therefore, such as his interest might induce him to make, and therefore inadmissible. If it appeared that he had a title in fee alike in all parts of the property, in that which was the life estate by twenty years' adverse possession, his interest would be neutralized, and his declarations competent, but the case finds that it did not appear that he had any but a life estate in the dower.

IV. The inventory of Martin's estate was admitted, as tending to show that he had no interest in the estate, this land not being mentioned. This evidence was not conclusive, nor, perhaps, entitled to much weight. It is the admission of the executor, who is one of these petitioners, that he had no knowledge that the deceased had a title, because it was clearly his duty to cause an inventory to be taken of the real as well as of the personal estate. It is like an admission, verbally, by the petitioner at the same date, that he did not know that the deceased had any title. It was, therefore, properly admitted.

V. To prove a conveyance from Betsey Kimball, testimony was offered that just before Wheeler conveyed the land to

Thompson, Moses Kimball, her husband, started with a sleigh, saying he was going to Wheeler's for a load of goods, and he presently returned with a load of goods, of about the value of his wife's interest. Taken altogether, the testimony has no tendency to prove a deed by Betsey Kimball. It tends to prove a purchase of goods for cash, or on credit, or on some bargain, or exchange ; but it tends to prove no one of these more than another. To give it any point it needs some circumstance to connect it with a conveyance, and there is nothing but the time, " just before the conveyance by Wheeler," and the value, " about the value of his wife's interest in the land," and these are entirely too slight. The declaration where he was going was inadmissible, for reasons stated in our former opinion, but it does not seem to be material.

VI. The conversation between Mrs. Kimball and Thompson was admissible to discredit Mrs. Kimball, because it was in some degree inconsistent with her testimony in the case. But it was contended that it was also competent to prove the facts stated and admitted by her. Generally the statements of a witness made out of court, proved for the purpose of contradicting him, are mere hearsay, and inadmissible for any other purpose. But it is said the declarations of this witness were evidence in chief, because, when made, they related to and substantially affected her own title, under which Morrill now claims. Both parties claim the land once owned by the witness — the defendant under a deed made in 1803, and supposed to be lost ; the plaintiff under a deed dated in 1845. The declarations are alleged to be made in 1841. Mrs. Kimball had not been in actual possession in 1841. After the dower expired, in 1829, she had possession in law, if she had not made a conveyance in 1803 ; but if she had made such a deed, she had no possession whatever. Yet, as the declarations of the petitioner, though out of possession, are evidence against his title, so the declarations of his grantor, during the time she held the title now claimed under her, must be admitted. The rule is universal, that the admissions of the person under whom a party claims,

made while he is alleged by such party to have held the title, is evidence against such party. 1 Greenl. Ev., sec. 189 ; 1 Cow. & Hill's Notes to Ph. Ev. 265, note 194.

In the present case the petitioner Morrill claims under Mrs. Kimball's deed of 1847. He alleges that her right accrued upon the death of her father, and that she remained the owner until this deed. Her declarations, made between the time her title accrued and the date of her deed to Morrill, are evidence against herself and all claiming under her. See *Proprietors of Claremont* v. *Carlton*, 2 N. H. 372 ; *Pike* v. *Hayes*, 14 N. H. 19 ; *Smith* v. *Powers*, 15 N. H. 563 ; *Hobbs* v. *Cram*, 2 Foster 130. We do not understand that this evidence can be reasonably objected to on the ground of any surprise or unfairness in the manner of its introduction.

VII. The charge of the court, as to the point of adverse possession, seems to us correct and proper, though its materiality is not very apparent, since all parties claimed under Joseph Hemphill, and his bare possession was seizin and title enough between them.

The rulings of the court are sustained, except the second and sixth ; but as these are material, there must be

*A new trial.*